UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOINT ADMINISTRATIVE COMMITTEE OF
THE PLUMBING AND PIPEFITTING INDUSTRY
IN THE DETROIT AREA, PLUMBERS LOCAL
NO. 98 APPRENTICESHIP FUND AND
PIPEFITTERS LOCAL NO. 636 INSURANCE
FUND,

                Plaintiffs,                            Case number 06-14288

v.                                                   Honorable Julian Abele Cook, Jr.

WASHINGTON GROUP INTERNATIONAL,
INC.,

                Defendant.

ORDER

On May 31, 2007, the Plaintiffs, Joint Administrative Committee of the Plumbing and Pipefitting Industry in the Detroit Area, Plumbers Local No. 98 Apprenticeship Fund ("Joint Administrative Committee"), and Pipefitters Local No. 636 Insurance Fund, and the Defendant, Washington Group International, filed separate motions with the Court, with each of them seeking to obtain a summary judgment in their favor. Fed.R.Civ.P 56.

I.

The Joint Administrative Committee is an entity which has the responsibility of collecting unpaid fringe benefit contributions that are owed to various trust funds pursuant to collective bargaining agreements between the Metropolitan Detroit Plumbing & Mechanical Contractors Association, Inc., and two unions; namely, (1) the Journeymen Plumbers Local No. 98 of the

United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Plumbers Local 98"), and (2) the Pipefitters, Refrigeration, and Air Conditioning Service Local Union No. 636 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Pipefitters Local 636").

The Washington Group International ("WGI"), is a civil engineering and construction firm that specializes in infrastructure, mining, energy, and power. The WGI performs recurring industrial maintenance work under a contract with the owners of plants in Mount Clemens and Troy, Michigan. In addition, the WGI works on these projects under the auspices of the General President's Project Maintenance Agreement ("GPPMA"), to which it has been a signatory for the past twenty years.

The GPPMA is a national collective bargaining agreement between a group of national maintenance and engineering contractors, including the WGI, and fourteen international building trades unions, including the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada.[1] This national collective bargaining agreement covers maintenance, repair, renovation and replacement work in plants, industrial facilities, and utility installations. Pertinent language within the GPPMA provides that contractors, such as the WGI, "are not required to become signatory to a local collective bargaining agreement." (GPPMA, Article I, ¶ 1, Plaintiff's Ex. A.) The GPPMA also contains the following provision:

> Fringe benefits as negotiated in local and/or National working agreements shall be paid in addition to wage rates. . . . Only bona fide fringe benefits which accrue to the direct benefit of the individual craft employee are required. This includes health & welfare funds, annuity,

---

[1] Plumbers Local No. 98 and Pipefitters Local No. 636 are local chapters of this union.

vacation, apprenticeship, training funds, and pension funds. Construction industry promotional funds are not applicable under the terms of this Agreement.

(GPPMA, Article XII, ¶ 2, Plaintiffs' Ex. A.)

The collective bargaining agreement between the Metropolitan Detroit Plumbing & Mechanical Contractors Association, Inc. and the Plumbers Local No. 98 provides that employers "shall pay into the Industry Fund the applicable contribution specified in the 'Wage and Benefit Schedule' of this agreement for each hour worked by each of its Employees. . . ." (Article VI (D)(5)(a), Plaintiffs' Ex. A at 15.) This section also states that the Industry Fund is "designed to promote and improve the industry." (Article VI(D)(5)(b), Plaintiffs' Ex. A at 15-16.)

On October 17, 2002, the Metropolitan Detroit Plumbing & Mechanical Contractors Association, Inc. and Plumbers Local No. 98 agreed to modify Article VI(D)(5)(a) of their collective bargaining agreement with a memorandum of understanding by adopting the following language: "Effective December 1, 2002, any signatory employer not contributing to the Industry Fund shall contribute a like amount to the Metropolitan Detroit Plumbing Industry Training Fund. . . . ." (Plaintiffs' Ex. E.)

The collective bargaining agreement between the Metropolitan Detroit Plumbing & Mechanical Contractors Association, Inc. and the Pipefitters Local 636 states, in pertinent part, that:

> Employers agree to contribute the current allocated sum for each hour worked by each Employee . . . to the Plumbing and Mechanical Contractors of Detroit Industry Fund. Effective June 1, 2002, any non Association contractor who . . . elects not to contribute to the Industry Fund shall . . . contribute a like amount to the Pipefitters Local No. 636 Insurance Fund.

(Article VI, ¶ 49, Plaintiffs' Ex. B at 33.) This collective bargaining agreement was subsequently modified by a memorandum of understanding which effectively revised Article VI, ¶ 49 on March 1, 2006 by stating that those employers who fail to pay into the Industry Fund must make "a like-

3

kind contribution" to the Insurance Fund. (Plaintiffs' Ex. F.)

The record reveals the following facts which are not disputed by any of the litigants in this litigation: The WGI did not make any (1) contributions to the Plumbers Local 98's Industry Fund pursuant to Article VI (D)(5)(a) of the parties' collective bargaining agreement, (2) payments to the Pipefitters Local 636 Industry Fund pursuant to Article VI, ¶ 49 of its collective bargaining agreement, and (3) "like-kind contributions" to the Local 98's Training Fund or the Local 636's Insurance Fund, as described in the memoranda that amended the collective bargaining agreements.

Here, the Plaintiffs have alleged that the WGI is legally obligated to make payments to the Plumber's Training Fund and the Pipefitter's Insurance Fund. According to the Plaintiffs, the WGI is indebted to (1) the Plumber's Training Fund in the amount of $11,354.66, and (2) the Pipefitters Insurance Fund for the sum of $63,119.75.

II.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Federal Rule of Civil Procedure 56(c) indicates that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, a Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d

1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of this Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment in favor of the movant. Fed. R. Civ. P. 56(e). On the other hand, the presentation of a mere scintilla of supporting evidence is insufficient to support the requested relief. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

In seeking to obtain a summary judgment, the Plaintiffs rely upon Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, which governs employer contributions to multi-employer fringe benefit plans, such as those plans that are at issue in this case:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Thus, employers are required to make contributions according to the terms of their collective bargaining contracts. *Brown-Graves Co. v. Central States*, *Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 683 (6th Cir. 2000).

Here, in the collective bargaining contract to which the WGI is a signatory, the GPPMA states that employers "are not required to become signatory to a local collective bargaining agreement." (GPPMA, Article I, ¶ 1, Plaintiff's Ex. A.). However, employers are required to pay "fringe benefits as negotiated in local and/or National working agreements." (GPPMA, Article XII, ¶ 2, Plaintiffs' Ex. A. at 11.) Finally, contributions to "[c]onstruction industry promotion funds" as a form of a fringe benefit are not required. (*Id.*)

In this case, the Plaintiffs are not seeking to require the WGI to make contributions to the unions' industry funds. (Plaintiffs' Brief at 9.) Rather, they argue that the WGI is obligated to make "like-kind" contributions to the Plumber's Training Fund and the Pipefitter's Insurance Fund in accordance with the memoranda of understanding which amended the collective bargaining agreements. WGI disagrees.

Contributions to the unions' industry funds are not required under the GPPMA. In fact, Article XII, Section 2 of the GPPMA expressly excludes industry promotion funds from those fringe benefit plans that employers are required to pay. Thus, this Court must determine is whether the WGI is required to make the "like-kind" contributions to the Plumber's Training Fund and the Pipefitter's Insurance Fund as argued by the Plaintiffs.

Language in a contract must be given enforcement according to its obvious meaning, and a court is obliged to read the parties' agreement as a whole when attempting to apply the plain language of the contract. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57 (2000). When the language

that is used by the parties is clear and unambiguous, an interpretation by the court and its enforcement is limited to the wording within the parties' contractual agreement. *Michigan Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994). The parties – in the absence of extenuating and legally prohibitive circumstances – are presumed to understand and intend that which the employed language clearly states. *Burkhardt v. Bailey*, 260 Mich. App. 636 (2004). In addition, "every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *McIntosh v. Groomes*, 227 Mich. 215, 218 (1924). Finally, if the language within the contract is clear and unambiguous, then its meaning is a question of law. Similarly, the issue of whether certain language within a contract is ambiguous is also a question of law. However, if language is found to be ambiguous, its meaning becomes a question of fact. *NILAC Intern. Marketing Group v. Ameritech Services*, Inc., 362. F.3d. 354 (6th Cir. 2004).

When determining whether a contract is ambiguous as a matter of law, courts may consider the extrinsic evidence that has been offered in support of each party's interpretation of the contested language. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684 n. 12 (6th Cir. 2000) ("Extrinsic evidence can become a consideration before an ambiguity has been identified from the face of the contract as a matter of law, in the limited sense that such evidence can assist the court in determining whether, as a matter of law, two plausible interpretations exist in the manner necessary to give rise the existence of an ambiguity.").

On February 22, 1993, the Joint Labor/Management Interpretation Committee – a body vested with the responsibility to interpret the GPPMA – determined that "Construction Industry Promotion Funds are excluded – by Article XII, Section 2" of the GPPMA, and therefore, that "any

7

attempt to divert industry fund payments to any other fringe benefit fund would circumvent the intent of the agreement." (Defendant's Brief, Ex. 2 A.) Approximately three years later (March 13, 1996), the General Presidents' Committee – a group that is responsible for administering the GPPMA – resolved a dispute between a local union chapter and a construction company when it concluded that management was not required to contribute to the local union's industry promotion fund. This Committee also opined that "the contractor is not required to remit additional contributions to the Apprenticeship Training Trust Fund or any other fund in lieu of Industry Fund contributions." (Defendant's Ex. 2 B.) The WGI submits that this extrinsic evidence supports its position, contending that there is no ambiguity in the contract inasmuch as the two bodies which have the responsibility for interpreting and administering the GPPMA found that there is no obligation to contribute to alternative funds in lieu of industry fund contributions.

However, the Plaintiffs urge the Court to adopt the reasoning and holding by the Court of Appeals for the Ninth Circuit in *UA Local 342 Apprenticeship & Training Trust v. Babcock & Wilcox Co.*, 396 F.3d 1056 (9th Cir. 2005). In that case, the defendant company entered into a national collective bargaining agreement with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. *Id* at 1057. The provisions within this national collective bargaining agreement stated that contributions to various funds "shall be made in accordance with the Local Union Labor Agreement."[2] *Id.* However, this same national collective bargaining agreement also stated that industry promotion fund

---

[2] The national collective bargaining agreement at issue here states that "(w)elfare Funds, Pension Funds, Apprenticeship Training Funds and other monetary funds called for in the Local Union Labor Agreement shall be paid in accordance with the Local Union Labor Agreement." *Babcox & Wilcox*, 396 F.d3d at 1057.

contributions were not mandatory. *Id*. The local collective bargaining agreement required those employers, who did not contribute to industry promotion funds, to pay an equal amount into the apprenticeship training fund. *Id.* at 1058. The defendant company in that case declined to pay into the industry promotion fund or to make any "like-kind" contributions to the apprenticeship training fund. The Ninth Circuit found in favor of the plaintiff, and held that the company was obligated to make additional payments to the UA Local 342 Apprenticeship & Training Trust. *Id.*

Contrary to the Plaintiffs' position on this issue, the case at hand is distinguishable from the *Babcock & Wilcox* case. Here, the unambiguous text of the GPPMA clearly states that only fringe benefits which "accrue to the direct benefit of the individual craft employees" must be paid, and specifically excludes industry promotional funds. The language within the GPPMA is very clear, and quite different from the national collective bargaining agreement in *Babcox & Wilcox*. The memoranda of understanding, which amended the local collective bargaining agreements, attempts to substitute "like-kind" contributions for industry promotion funds, resulting in additional contributions to those funds that employers, such as the WGI, have already contributed. This, in turn, imposes an unwarranted burden upon those contractors that was neither contemplated nor incorporated by the framers of the GPPMA. Under these circumstances, the Court has no choice but to find that industry promotion fund contributions, or additional contributions to other funds in lieu of such contributions, are not required by the GPPMA.

Accordingly, and for the reasons stated above, the Court must, and does, grant the WGI's application for the entry of a summary judgment. The Plaintiffs' motion for summary judgment is denied.

IT IS SO ORDERED.

Dated: January 9, 2008             s/ Julian Abele Cook, Jr.
       Detroit, Michigan             JULIAN ABELE COOK, JR.
                                       United States District Court Judge

<u>Certificate of Service</u>

     I hereby certify that on January 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                                         s/ Kay Alford
                                                                         Courtroom Deputy Clerk